IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>   Plaintiff, )<br>          )<br>   v.        )<br>           )<br>           )<br>CASTULO CORTES    )<br>   Defendant.    )<br>           ) | **Docket No. 19 CR 849-2**<br>**Judge Norgle** |

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant, *Castulo Cortes* (hereafter "Cortes"), by and through his attorney *James D. Tunick*, pursuant to Rule 32 of the Federal Rules of Criminal Procedure, 18 U.S.C. Section 3553(a), and the Supreme Court's opinion in *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738 (2005), hereby respectfully submits the following Sentencing Memorandum/Position Paper on Sentencing Factors:

  **I.**  **United States Sentencing Guidelines calculations**

There are no objections to the application of the Federal Sentencing Guidelines ("Guidelines") in the Pre-Sentence Investigation Report ("PSR") as to the offense related or criminal history calculations.

  **II.**  **Application of the 3553(a) factors to Robinson**

There is significant mitigating evidence in this case and an overwhelming lack of a future risk of recidivism. So much so, the most appropriate sentence this Court should impose, which is consistent with 18 U.S.C. §3553(a) and the goals of sentencing, is home incarceration.

The Seventh Circuit has emphasized how "the Guidelines are, after all, guidelines [that] must be considered seriously and applied carefully…In the end, however, the defendant's sentence is the responsibility of the district judge, after careful consideration of all the relevant factors under 18 U.S.C.§3553(a)." *United States v. Lopez,* 634 F.3rd 948, 953-954 (7th Cir. 2011)(internal citations

omitted). Adequate considerations of the §3553(a) sentencing factors helps ensure that the sentencing decision is individualized, as it must be. Individualized consideration necessarily requires the Court to impose a sentence that is "sufficient but not greater than necessary"-a standard known as the parsimony clause that is the "overarching provision" of § 3553(a). *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). By its very terms, that provision instructs the Court to consider a sentence that is the least severe, i.e. not greater than necessary. *See United States v. Santoya*, 493 F. Supp. 2d 1075, 1077 (E.D. Wis. 2007)("This is the so called 'parsimony provision' which requires district courts to impose the minimum punishment needed to satisfy the purposes of sentencing-just punishment, deterrence, protection of the public and rehabilitation of the defendant.")

This Court is no doubt familiar with the wide sentencing discretion provided under 18 U.S.C. §3553(a) in the now sixteen years since the Supreme Court decided *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 748 (2005), and as was reiterated in cases such as *United States v. Rita*, 553, U.S. 338 (2007), and *Gall v. United States*, 552 U.S. 38 (2007).[1] As such, counsel will not re-state all of the law supporting that discretion here. Under 18 U.S.C. §3661, "no limitation shall be place on the information concerning the background, character, and conduct of {the defendant} which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

---

[1] The Gall court explained the post-Booker sentencing procedures as follows:
    [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the §3553(a) factors of determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to perception of fair sentencing.

*Gall*, 552 U.S. at 49-50 (internal citations omitted)

Although the guidelines are still a sentencing factor pursuant to *Booker*, it is now just one factor to be considered under the rubric of 18 U.S.C. § 3553(a). Under 18 U.S.C. § 3553(a), this court is to consider seven general factors: 1) the nature of the offense and the history and characteristics of the defendant; 2) the need for the sentence to punish, deter and rehabilitate; 3) the kind of sentences available; 4) the advisory guideline range; 5) pertinent policy statements under Section 994; 6) avoidance of sentencing disparities; and 7) the need to provide restitution to any victims of the offense.

Cortes would like to comment on certain of the 3553(a) factors which he believes are relevant to his sentencing and supportive of a well below guidelines sentence.

1. *Nature and circumstances of the offense and history and characteristics of the defendant.* § 3553(a)(1)

Cortes is now sixty six years old, He began working in the United States at the age of thirteen in the agricultural fields and then picking oranges in Florida's orange groves. Eventually, he moved to Chicago, Illinois where he became a legal United States resident in 1983 and ultimately, became a United States citizen in 1995. When Cortes was 21 years old, he married and had his first child but the young marriage didn't last very long. A subsequent long term relationship with Virginia Aguero brought three daughters. Cortes is a grandfather many times over and is very involved with the lives of both his daughters and his grandchildren. Two of his daughters live in the Chicagoland area, and Cortes participates in many family activities with them and their children.

For the last twenty five years[2], Cortes has worked as a trucker for a trucking company that he started CCP Express. He provided the United States Probation Office with documentation (including tax returns) verifying his ownership and operation of his business. As USPO Smith correctly notes, Cortes' annual income "is dependent upon the volume of freight being hauled, fuel

---

[2] Prior to being a commercial truck driver, Cortes worked factory worker and general laborer for well over a decade.

prices and vehicle maintenance." As a result, of his trucking company he was able to support his family and purchase property that still have significant mortgages on them. The mortgage at the residence at 2630 Highland Ave is paid by his daughter Rosa Aguero who lives at the Berwyn house with her children.

The natural and persistent question is; why did Cortes' become involved as a courier to drop off narcotics at the Portillo's in Crestwood on behalf of an individual he barely knew? It really defies a logical explanation given Cortes' work history, family life and relationships, and the stage in his life. As Cortes' daughter stated to USPO Smith, "She has no insight as to what compelled her father to commit the offense conduct." but also noted that her father has always been family oriented and a good person.[3] In his proffer with AUSA Erskine and the case agent, Cortes, in essence, explained that as a trucker he was approached many times, until finally succumbing to the offer while feeling some pressure to conduct the transaction.

This is a sad tale of criminal conduct involving narcotics. Cortes is now 66 years old. In the 53 years Cortes has been in the United States, he does not have a single arrest, and he has only been ticketed for minor driving offenses, which is not particularly unusual given he drives for a living. Cortes has worked an honest living basically since he was 13 years old.

Cortes has submitted numerous letters to this Court on his behalf with this sentencing memorandum. The letter are from his daughters, his friends, owners of trucking/transport businesses that Cortes worked for, grandchildren, members of the church that Cortes attends, and others in the Chicagoland community. The letters share a common theme: Cortes is an incredibly hard working, honorable, dependable, warm hearted and devoted family man to his daughters and grandchildren. His son in law, Ramon Juarez, who has been in the military the last 15 years wrote

---

[3] In her letter to this Court, Rosangelo Aguero states, "I still believe in my heart that my father Castulo Cortes is an outstanding, caring, kind, hardworking man-outstanding grandfather and an amazing human being. He has been an amazing role model for my sister and me."

about how Cortes would gather old clothes and send the clothes to the needy children in Mexico. Ramon Juarez also wrote about Cortes "tireless" work ethic. All the letters speak about how he started his hard working nature and integrity has served as a role model for all the people around him.

    2. *The need to deter, punish, rehabilitate.* 18 U.S.C. § 3553(a)(2)

In fashioning its sentence, the Court also takes into account the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; to afford adequate deterrence (general deterrence) and protect the public from further crimes of defendant (specific deterrence) and to provide the defendant with needed educational or vocational training, medical care, or correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2)(A)-(D).

As to specific deterrence and the need to protect the public from further crimes of the defendant, Cortes maintains that he is as low a risk of possible future recidivism as any offender that might appear before this Court. Prior to this case, Cortes had never even been arrested for any crime in his 53 years in the United States. He has demonstrated stellar conduct while on the conditions of release set by this Court. He has emotional support from his family and friends, along with employment opportunities and skills. Cortes understands his obligations to his children, to his family, society and to himself. Cortes is also a well-grounded man with good values and integrity.

It seems that the parties agree that there exists a lack of any risk for recidivism in this case and empirical studies of federal offenders support this conclusion. Cortes is currently 66 years old with children and grandchildren that he has supported through legitimate hard work, and he has never been previously arrested for a criminal offense. This lack of a recidivism risk is demonstrated in recidivist studies. *Measuring Recidivism*; *The Criminal History Computation of the Federal Sentencing Guidelines,* RESEARCH SERIES ON THE RECIDIVISM OF FEDERAL GUIDELINE

OFFENDERS, Release 3 at 5-6. In fact, defendants in Criminal History Category I with no criminal history points have the lowest risk of committing further crimes. *Id* at 5-6. While 55.1% of defendants in Criminal History Category VI recidivate, only 13% of Criminal History Category I defendants commit future crimes. Defendants who are between the ages of 36 and 40 at the time of sentencing in Criminal History Category I recidivate at a rate of only 10%. *Id.* at 28. Finally, Defendants who are married and above the age of forty at the time of sentencing in Criminal History Category I, recidivate at a much lower rate than 10%. *Id.* at 12.

### 3. *Kind of sentences available/Advisory guideline range. 18 U.S.C § 3553(a)(3)*

With respect to the Guidelines range, Cortes is in Criminal History Category I and facing a Guideline Sentence of 46-57 months. Given all the mitigating evidence in this case, the United States Probation Office has kindly recommended a sentence of 24 months in the custody of the Bureau of Prisons. Nevertheless, this Court has the authority to impose probation with a term of home incarceration, which Cortes seeking from this Court. Based on all the sentencing factors and the advisory guideline range, Cortes requests that this Honorable Court impose a sentence of probation with a period of 12 months in home incarceration.

Respectfully submitted.

/s James D. Tunick

**CERTIFICATE OF SERVICE**

I hereby certify that foregoing Defendant Cortes' **SENTENCING MEMORANDUM** was served on April 25, 2022 in accordance with Fed.R.Crim.P.49(b), Fed.R.Civ.P.5(b)(2)(D), LR 5.5, Fed.R.Civ.P.5(e) and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

**s/ James D. Tunick**

**LAW OFFICE OF JAMES D. TUNICK**
650 N. Dearborn St Suite 700
Chicago, Illinois 60654 (773)425-1657